## Lancaster County National Bank's Appeal.

### Haverstick et al. *v.* Sheirich et al.

438

[redacted]

Argued May 25, 1931. Before FRAZER, C. J., WALL-ING, SIMPSON, KEPHART, SCHAFFER and MAXEY, JJ.

*F. Lyman Windolph,* with him *T. Roberts Appel,* for appellant.—The letter from Sheirich to Pennsylvania Department of Highways, together with the duly authorized power of attorney from Sheirich to appellant and the correspondence between appellant and the department of highways, constituted an equitable assignment of the retained percentage from Sheirich to appellant of which the department of highways was duly notified: Key's Est., 137 Pa. 565; Beaumont Bros. v. Lane, 3 Pa. Superior Ct. 73; East Lewisburg L. Mfg. Co. v. Marsh, 91 Pa. 96; Watson v. Bagaley, 12 Pa. 164;

Ruple v. Bindley, 91 Pa. 296; Fett's Est., 39 Pa. Superior Ct. 246; Moeser v. Schneider, 158 Pa. 412; Patterson v. Caldwell, 124 Pa. 455; Hurley v. Ashbridge, 55 Pa. Superior Ct. 523; Trust & Surety Co. v. Howell, 19 Pa. Superior Ct. 255.

The claim of appellant by virtue of its equitable assignment is superior to the claim of appellee: Wethrill's App., 3 Grant 280; Mifflin Co. Nat. Bank's App., 98 Pa. 150; Mott v. Clark, 9 Pa. 399; Kountz v. Kirkpatrick, 72 Pa. 376; Winton's App., 2 Sadler 83; Henderickson's App., 24 Pa. 363; Prairie State Nat. Bank v. United States, 164 U. S. 227.

*John T. Olmsted,* for appellee.—There was no effective assignment to the bank, equitable or legal, for no assent thereto was given by the state highway department: Fels & Co. v. Ins. Co., 48 Pa. Superior Ct. 27; Trumbower v. Ivey, 2 Pa. C. C. R. 470.

Appellee's claim upon the deferred payment is not based on a "secret equity" but upon an equitable lien, whereof the bank had at least constructive notice: Com. v. Surety Co., 50 Pa. Superior Ct. 404.

The surety company had an equitable lien upon the deferred payment, and no notice was necessary in order to perfect this lien: Prairie State Bank v. United States, 164 U. S. 227.

OPINION BY MR. JUSTICE SIMPSON, June 27, 1931:

The state highway department advertised for bids to construct a portion of the work on State Highway Route No. 280, at Chickies Creek in Lancaster County. Paul H. Sheirich, Inc., hereinafter called the contractor, was the lowest bidder, and, on being so advised, applied to the American Surety Company, appellee herein, to give the required security, agreeing that, if it did, it should, in case of default, be subrogated to the contractor's rights, so far as concerned payments to be made under the contract. The Act of May 16, 1921, P. L. 650

(amending section 13 of the Act of May 31, 1911, P. L. 468), which was the statute in force during the course of these proceedings, directed that the bond should provide for completion in accordance with the terms of the contract, and also that the contractor would "well and truly pay for all material furnished and labor performed in and about the construction of said highway." The contract itself, which was to be and later was executed, not only provided for the proper performance of the work, but also that the contractor "shall not assign . . . . . . any right to any moneys to be paid him hereunder . . . . . . without the consent in writing of the Secretary of Highways," and that "The Secretary will withhold the payment of any semi-final or final estimate, pending the receipt of the 'Application for Release of Bond,' " which application (the required form being attached) further stated that it would not be granted until "all claims for labor and materials [incurred in the performance of the contract] have been satisfactorily settled." The condition of the bond itself also required proper performance, payment of workmen and materialmen, and the filing of the same form of application for release of bond.

Upon the faith of the foregoing provisions of the statute, contract and application to it, the surety executed the bond, the contract was signed by the state highway department and the contractor, and the latter proceeded with the work. It does not appear whether the department knew of the fact of the contractor's express assignment to the surety, as set forth in the application for the suretyship, nor, in the view we take of the case, is this a controlling matter, especially as the department knew the surety had an equity to have all bills for labor and materials fully paid, and knew the contractor was required to pay them, under its contract and bond. The contractor did not pay them, however, and the surety was obliged to do so in compliance with the terms of its bond.

After the contractor had performed much of the work of construction, it applied to The Lancaster County National Bank, appellant herein, for a loan of $5,000. Following certain correspondence with subordinate officials of the state highway department, it took from the contractor a power of attorney to receive the semifinal payment when due and payable, and then made the loan. The bank gave the officials with whom it corresponded, notice of all these proceedings, including the fact of the loan of the $5,000. The court below decided that this correspondence only resulted in making the bank the contractor's agent to collect the semifinal payment; but, for the purposes of this appeal, we shall assume that it operated as an assignment by the contractor to the bank of whatever sum the State would thereafter be required to pay the contractor as the semifinal payment under the contract, subject, of course, to the rights of the workmen and materialmen and those standing in their shoes to be paid in full, as the above quoted provisions required, before the contractor, or the bank as its assignee, could get anything. The secretary of highways did not consent to the assignment to the bank, nor did the officials with whom the bank corresponded, undertake to alter any of the provisions of the contract; indeed, they had no authority so to do.

Before either the semifinal or final payment was made, the contractor became insolvent and a receiver of his estate was duly appointed. By agreement of the parties, without prejudice to the rights of any of them, these two payments, amounting to $9,310.31, were made to the receiver, who filed an account charging himself therewith. At the audit, the whole of that sum was claimed by the surety, which had paid an amount in excess thereof to the workmen and materialmen, and by the bank, to the extent of its loan with interest. The court below decided in favor of the surety and the bank appealed. The decree must be affirmed.

Recognizing that the contractor's application to the surety operated as an assignment to the latter, to the extent that liability might accrue because of its execution of the bond, and that, being prior in date to that to the bank, ordinarily it would be prior in right, the bank claims that the failure of the surety to give notice to the department of highways of the fact of its assignment operated to postpone its right to that of the bank, which did give notice of the assignment to it. Whether the surety gave notice we do not know, and it is grave question whether or not the burden of proof regarding this was not on the bank, since it was attempting to disturb the usual order of priority. It is also a grave question whether the surety, in order to retain its priority, would, under any circumstances, be required to notify the state highway department of the assignment in the contractor's application to the surety. The department knew all of the facts relating to the statute, contract and bond, and these, as we will later show, effectually operated to sustain the surety's paramount right. It is not necessary, however, to pass upon the questions of the department's knowledge, or of where the burden of proof rested, since the bank's right, in any event, is dependent on establishing the fact that, at the time it made its loan to the contractor, it had no actual or constructive notice of the surety's rights: Collins's App., 107 Pa. 590; Davis v. Billings, 254 Pa. 574. Upon this point it offered no evidence. It was of course bound to know what were the statutory requirements regarding the contract and bond, and, as it was claiming the right to receive a sum payable to the contractor, under the terms of the contract, it was bound to take notice also of the fact that the contractor could not get the semifinal estimate, which is the one in controversy here, until and unless all "claims for labor and materials [incurred in the performance of the contract] have been satisfactorily settled," and that the surety had an equity to insist that the secretary of the department "withhold the payment

of any semifinal or final estimate" until these claims were paid, as by the contract itself he said he would do, and on the faith of which provision, inter alia, the surety executed the bond: Derby v. United Stated Fidelity & Guaranty Co., 87 Oregon 34; Canton Exchange Bank v. Yazoo Co., 144 Miss. 579. The bank cannot rest upon the contention that it did not in fact know of these things; it was put upon inquiry regarding them, and, inquiry having become a duty, it was bound by all it would have ascertained had it duly inquired. It knew, for it was bound to know, that the statute, the contract and the bond made the rights of the materialmen and workmen paramount to those of the contractor, and that upon these provisions the materialmen, workmen and surety had the right to rely. Nothing that the bank could do could alter that status, and its rights rise no higher than those of the contractor: Maryland Casualty Co. v. Dulaney Lumber Co., 23 Fed. (2d) 378. It is not disputed that the bank was affected with notice that there was a surety, which became liable to pay the materialmen and workmen if the contractor did not. This liability being statutory, and known by the bank to be so, common prudence called upon it, before it made its loan, to inquire into the circumstances under which the surety assumed that liability: Maryland Casualty Co. v. Dulaney Lumber Co., supra.

Under precisely similar circumstances to those appearing in the instant case, the point here in dispute was decided in favor of appellee's contention, in Henningsen v. United States Fidelity & Guaranty Co. of Baltimore, Maryland, 208 U. S. 404. There, as here, the bank loaned money to the contractor and took an assignment of future payments to be made under the contract. There, as here, the statute required that the surety's bond should additionally provide (page 406) "that such contractor or contractors shall promptly make payments to all persons supplying him or them labor and materials in the prosecution of the work provided for in such con-

tract," and authorized suit by them on the bond if they were not paid. There, as here, such payments were not made by the contractor, and the surety was obliged to make them; and there, as here, the question to be decided was whether the surety or the bank was entitled to the balance of the contract price. The Supreme Court of the United States (page 411), quoted with approval the following excerpt from the opinion of the circuit court of appeals: "Whatever equity, if any, the bank had to the fund in question, arose solely by reason of the loans it made to Henningsen. Henningsen's surety was, upon elementary principles, entitled to assert the equitable doctrine of subrogation; but it is equally clear that the bank was not, for it was a mere volunteer, and under no legal obligation to loan its money: Prairie State Bank v. United States, 164 U. S. 227; Insurance Co. v. Middleport, 124 U. S. 534; Sheldon on Subrogation, section 240."

With this statement of the law we are in complete accord, and it compels an affirmance of the present decree. Mock, trustee, v. Bechtel, 101 Pa. Superior Ct. 181, greatly relied on by appellants, is beside the present case. The Superior Court decided against the surety, because the contract there involved (page 183) "contained no clause, covenant or provision for the protection of laborers or materialmen furnishing work or materials in the erection of the bridge; nor was there any statutory requirement that it should do so." For this reason it was said (page 186) that the "method of procedure [provided by the applicable statute in that case] is wholly different from that prescribed in the construction of federal works, as interpreted in the federal decisions relied on by appellant." In the present case, on the other hand, we have substantially the same statute and contract and the procedure is the same as "that prescribed in the construction of federal works."

The decree of the court below is affirmed and the appeal is dismissed at the cost of appellant.