Hart, J.
 

 Maryland, in its appeal (No. 30384), complains that the trial court erred in giving American’s special request to charge before argument, in its charge after argument, and in failing to charge thé jury before argument propositions of law requested by Maryland in writing.
 

 
 *311
 
 Gough, in his appeal (No. 30400), asserts that the trial court correctly charged on the issues and complains that the Court of Appeals erred in’reversing the judgment in his favor on the ground that the charge of the trial court was erroneous.
 

 The amended petition alleges that Gough alone was responsible for the misapplication of the funds of the loan association. The first time this case was before the Court of Appeals on demurrer to the amended petition, that court was bound to accept the allegations of the pleading as true and judgment was rendered accordingly. However, the separate answers of Gough and American not only deny that Gough was responsible, but allege that Devine alone was responsible for the misappropriation of the funds. Under these denials evidence was admissible to show how the misappropriation actually took place, whether Devine alone was responsible, Gough alone, or Devine and Gough together. 17 Ohio Jurisprudence, 149, 150, Section 119, and cases cited.
 

 Furthermore, Gough and American themselves injected the subject of misappropriation by joint connivance of Devine and Gough into the case by requesting the court to charge before argument, and the court did so charge, as follows:
 

 “If you find from all the evidence that James A. Devine and Fred J. Gough, through connivance and collusion between them, wrongfully abstracted and misapplied and appropriated to their own use large sums of money aggregating the sum of $40,690 which caused and produced a loss to the receivership in this amount, then you must return a verdict in favor of the defendants, Fred J. Gough and The American Surety Company.”
 

 Under the evidence it was possible for the jury to have found any one of three factual situations: (1) That Devine alone misappropriated the funds in ques
 
 *312
 
 tion to his own use; (2) that Gough alone misappropriated the funds to his own use; or (3) that Gough, by direction of Devine, wrongfully diverted the funds or that Devine and Gough, by connivance and joint wrongful acts, misappropriated the funds for the use of the one or the other or both of them. However, under the pleadings there was but one issue calling for a verdict as to whether Gough was liable for the loss, and, if so, the additional issue as to whether American, as his surety, was liable for reimbursement.
 

 It is obvious that there could be no recovery from Gough and American if Devine alone misappropriated the funds to his own use. It is equally obvious that if Gough alone misappropriated the funds, as suggested in the second factual situation, Maryland would be entitled to recover in this action. But the jury found for Gough and American and thereby must-have found that Gough did not alone misappropriate the funds belonging to the receivership. By inference, we conclude that the jury must have found either that Devine alone was responsible for the misappropriation, or that Devine and Gough by connivance and joint wrongful acts brought about the defalcation. If the court’s charge as to the third possible factual situation was in all respects correct, our inquiry is at an end and the judgment of the Court of Appeals must be reversed as to Gough.
 

 The parts of the general charge complained of are as follows:
 

 “Under the law applicable in this case the right of the plaintiff, as surety of Devine the receiver, to recover from Gough, the defendant, and the other defendant who was Gough’s surety, is dependent on whether the facts in evidence show that any or all of the amount paid by the plaintiff, $32,035.73, arose by reason of defendant Gough having taken and appropriated the same to his own personal use, and that he
 
 *313
 
 had done so wholly without any direction from, knowledge of or connivance with J ames A. Devine, receiver. If the facts so show by the greater weight of the evidence the plaintiff has a right to recover; if the facts do not by that degree of proof so show the plaintiff does not have a right to recover. All the issues of fact submitted to you under that law can be put in the form of a question, thus: Did defendant Gough abstract, misapply and appropriate to his own use any sum of money belonging to the receivership, which sum was so abstracted, misapplied and appropriated to his own use entirely without any direction from, entirely without any knowledge of and entirely without any connivance or complicity with James A. Devine, receiver? That is your question. * * *
 

 “If you do not find by the greater weight of the evidence that defendant Gough abstracted, misapplied and appropriated to his own use any amount of the receivership funds without the direction, knowledge or complicity of James A. Devine, receiver, your verdict would be for the defendants.”
 

 Under the charge of the court, as above outlined, there could be no recovery under the third factual situation. Gough, according to his own testimony, drew large sums of money from the depositary bank and redeposited the same to his own personal account, without court authority, solely upon the suggestion of Devine to whom he gave his personal checks covering all or at least a part of the funds so withdrawn. This unauthorized withdrawal of funds by Gough and his transfer of same to Devine constituted sufficient warrant for the jury to find that the combined wrongful acts of Devine and Gough constituted a joint misappropriation of the funds in question. The court charged that if Devine and Gough through connivance and collusion between themselves wrongfully, abstracted and misapplied and appropriated to their own use the
 
 *314
 
 funds in question then Maryland could not recover from Gough and American. If Maryland was relegated to the rights of Devine and stood in his shoes as to Gough, the court’s instruction was correct, for this court is committed to the proposition that where one of two or more joint or concurrent tort-feasors, especially where their tortious conduct was intentional and wilful, has been compelled to pay damages on account of their joint or concurrent wrongful acts, he cannot maintain 'an action against his cotort-feasors for contribution or indemnity. Courts will not aid any joint tort-feasor in enforcing contribution or indemnity from the other or others, because each joint tort-feasor is individually liable for the entire damage and because joint tortfeasors are
 
 in pari delicto
 
 as to each other.
 
 Pennsylvania Co.
 
 v.
 
 West Penn Rys. Co.,
 
 110 Ohio St., 516,144 N. E., 51;
 
 Massachusetts Bonding & Ins. Co.
 
 v.
 
 Dingle-Clark Co.,
 
 142 Ohio St., 346, 52 N. E. (2d), 340;
 
 Smith
 
 v.
 
 Fall River Joint Union High School Dist.,
 
 1 Cal. (2d), 331, 34 P. (2d), 994. See, also,
 
 Maryland Casualty Co.
 
 v.
 
 Frederick Co.,
 
 142 Ohio St., 605, 53 N. E. (2d), 795.
 

 Furthermore, this court has held, in a series of cases, in harmony with the weight of authority, that where an indemnitor of a joint tort-feasor for the latter’s own default fully pays and satisfies a judgment against his indemnitee and another or others for damages resulting from their joint or concurrent default, such indemnitor has no greater right against the cotort-feasors than his indemnitee had against them; and that, although on payment the indemnitor takes an assignment of the judgment, he may not enforce payment of the whole or any part thereof by the codefendant or co-defendants of his indemnitee.
 
 Royal Indemnity Co.
 
 v.
 
 Becker,
 
 122 Ohio St., 582, 587, 173 N. E., 194, 75 A. L. R., 1481;
 
 United States Casualty Co.
 
 v.
 
 Indemnity Ins.
 
 
 *315
 

 Co. of North America,
 
 129 Ohio St., 391, 195 N. E., 850;
 
 Automobile Ins. Co. of Hartford, Conn.,
 
 v.
 
 Pennsylvania Rd. Co.,
 
 .133 Ohio St., 449, 14 N. E. (2d), 613. See, also,
 
 Massachusetts Bonding & Ins. Co.
 
 v.
 
 Dingle-Clark Co., supra; Smith
 
 v.
 
 Fall River Joint Union High School Dist., supra.
 
 TMs rule, applicaMe to claims for contribution, is likewise applicable to claims for indemnification. 27 American Jurisprudence, 467, Section 18.
 

 It is to be noted that in each of the three cases first cited in the preceding paragraph the plaintiff was an indemnitor and had entered into a contract to save its indemnitee harmless, not from the negligence or wrongful act of a third person, but from the negligence or wrongful act of its own indemnitee..
 

 Maryland, having paid the debt of Devine, is seeking reimbursement or at least contribution from Gough and his surety under the doctrine of subrogation. Subrogation is an equitable doctrine under which, as a result of the payment of a debt-by a person other than the principal debtor, there is a substitution of the former in the place of the creditor to whose rights he succeeds in relation to the obligation of the debtor, to the end that the burden of obligation be ultimately placed upon those to whom it primarily belongs, although in the recognition of the rights of others it may have been, for a time, borne by those who are only secondarily liable for the debt.
 

 But it must be observed that subrogation is allowed only in favor of one who has been obliged to pay the ■ debt of another, and not in favor of him who pays a debt in the performance of his own primary obligation. The right of subrogation never follows a primary liability and there can be no right of subrogation in one whose duty to pay is primary, or in one claiming under him, against one who is secondarily liable or not
 
 *316
 
 liable at all. In snob cases payment results in the ex-tinguishment of the debt. See
 
 Joyce
 
 v.
 
 Dauntz,
 
 55 Ohio St., 538, 45 N. E., 900.
 

 If Devine and Gough were joint tort-feasors, as assumed under the third factual situation, and' Devine personally had reimbursed the receivership for the full amount of the shortage, he would have paid his own debt. The successor receiver could not thereafter pursue Gough on the obligation for the very good reason that the debt had been paid, and for the further reason that the payment of a judgment or claim against two or more joint tort-feasors by one of them releases the other or others. -Under such circumstances no right, by way of subrogation, would flow from the successor receiver to Devine who had paid his own debt and could not claim contribution from Gough, his fellow tortfeasor. And if Maryland, as Devine’s indemnitor, stood in the position of agreeing to save Devine harmless, it paid its own debt in paying Devine’s debt to the successor receiver,. and acquired no rights of subrogation through Devine or the receiver against any one. It was evidently upon this theory and a reliance upon the doctrine óf the cases above cited that the trial. court gave the instruction above referred to.
 

 However, the Court of Appeals held that the charge of the trial court on the so-called third factual situation relating to the alleged joint wrong of Devine and Gough resulting in the loss of funds belonging to the receivership was erroneous and prejudicial to Maryland and reversed the judgment in favor of - Gough. That reversal was predicated on the theory that Maryland was not the indemnitor of Devine but was his surety and, having paid the amount of defalcation to the receivership, was subrogated to the rights of the successor receiver not only against Devine but against all persons liable for the loss.
 

 Clearly Maryland was surety on the bond of Devine.
 
 *317
 
 Its obligation to pay to the receivership, in case of loss through Devine’s default, was secondary as to Devine and not primary. It assumed responsibility for the faithful performance by Devine, as its principal, of his duties in the receivership. A surety is always entitled to exoneration from his principal in case the former has been obliged to respond for the principal. The indemnitor for the wrong of his indemnitee is not. He pays for his indemnitee and the obligation of the indemnitee is cancelled, but the indemnitor has also paid his own debt as primary obligor and has no claim for reimbursement against his indemnitee. It is the primary obligation of the indemnitor to pay the debt or obligation of the indemnitee. 42 Corpus Juris Secundum, 564, Section 2;'42 Corpus Juris Secundum, 567, Section 3.
 

 If a surety is compelled to pay the debt of his principal, the legal consequence is that the debt is satisfied and the debtor’s personal obligation to his creditor is extinguished, since payment by the surety has the same legal effect as payment by the debtor. But under such circumstances, equity employs a useful fiction in aid of the surety; it treats the latter as not having paid the obligation of the principal but as having purchased it. Hence, equity treats the debt as still subsisting until it is paid by the debtor, the principal on the bond. In other words, payment by the surety does not, in equity, extinguish any of the rights of the creditor against the debtor though it does so at law. But after payment by the surety, the creditor holds his rights, not for his own benefit, but for the benefit of the surety to whom these rights are assigned or transferred as against the debtor. The surety, having paid and fulfilled his obligation to the creditor, is entitled to exoneration from his principal, the real debtor.
 
 Zuellig
 
 v.
 
 Hemerlie,
 
 60 Ohio St., 27, 53 N. E., 447, 71 Am. St. Rep., 707;
 
 American Surety Co. of New York
 
 v.
 
 Bethlehem National
 
 
 *318
 

 Bank,
 
 314 U. S., 314, 86 L. Ed., 241, 62 S. Ct., 226, 138 A. L. R., 509;
 
 Haverstick
 
 v.
 
 Sheirich,
 
 304 Pa., 437, 155 A., 859, 76 A. L. R., 912.
 

 If Maryland, as surety, had not made good the shortage, without question the successor receiver, under the third factual situation, could have sued Devine and Gough as joint tort-feasors separately and could have secured separate judgments against each for the full amount of defalcation and could have enforced such judgments until his claim was satisfied by either one or both of such judgment debtors.
 
 Larson
 
 v.
 
 Cleveland Ry. Co.,
 
 142 Ohio St., 20, 50 N. E. (2d), 163. Maryland claims that by its payment it was subrogated to the rights of the receivership, stands in the shoes of the successor receiver, and is entitled to pursue ’Devine or Gough or both on the theory that they are primarily liable and that it is entitled to be exonerated or reimbursed for what it was obliged to pay under its liability.
 
 Zuellig
 
 v.
 
 Hemerlie, supra; Poe
 
 v.
 
 Dixon,
 
 60 Ohio St., 124, 54 N. E., 86, 71 Am. St. Rep., 713; 50 American Jurisprudence, 754, Section 111; Restatement of Security, 389, Section 141, comment
 
 h.
 

 This court recognizes the validity of this claim. Where the obligation of the principal is fully satisfied by the principal’s surety, the surety to the extent that he has contributed to this satisfaction, is subrogated not only to the rights of the creditor against the principal, but to the rights of the creditor against persons other than the principal whose negligence or wilful conduct has made them liable to the creditor for the same default. In so holding, it must be apparent that the doctrines announced in the
 
 Becker, Indemnity Insurance Company of North America
 
 and
 
 Pennsylvania Railroad cases,
 
 the three indemnity cases above cited, wherein the indemnitor indemnified its indemnitee against the latter’s default, are not applicable to the situation in this case and such cases must be distin
 
 *319
 
 guished from it. The charge of the court on this feature of the ease was therefore erroneous and prejudicial.
 

 The position here taken is amply supported hy judicial authority. In the case of
 
 American Bonding Co.
 
 v.
 
 National Mechanics Bank of Baltimore,
 
 97 Md., 598, the state of Maryland recovered a judgment against the American Bonding Company of Baltimore as the surety on the official bond of one Yansant as clerk of courts. The breach for which the suit was brought was the failure by Yansant to account for and pay over to the state certain money which had been paid to him collusively by the defendant bank as interest on funds received by him in his official capacity and kept on deposit with such bank. The plaintiff surety company in that case, having paid the state of Maryland the judgment against it and having failed to secure reimbursement from its principal Yansant, brought an action to recover from the defendant bank, a joint tortfeasor with Yansant. The supreme court of Maryland reversed a decree of the lower court in favor of the bank and entered a decree in favor of the appellant surety company, holding that a surety who has paid the debt of his principal is entitled to be subrogated to all the rights of the’ creditor, not only against the principal but also against another who joined in the tortious acts of the principal in creating the debt which the surety was compelled to pay.
 

 For similar holdings see
 
 United States Fidelity & Guaranty Co. v. Citizens State Bank of Langdon,
 
 36 N. D., 16, 161 N. W., 562;
 
 Kolb
 
 v.
 
 National Surety Co.,
 
 176 N. Y., 233, 68 N. E., 247;
 
 United States Fidelity & Guaranty Co.
 
 v.
 
 Union Bank & Trust Co.,
 
 228 F., 448;
 
 United States Fidelity & Guaranty Co.
 
 v.
 
 Citizens’ National Bank,
 
 13 F. (2d), 213;
 
 Martineau, Judge,
 
 v.
 
 Mehlberg,
 
 221 Wis., 347, 267 N. W., 9. See, also,
 
 Dantzler Lumber & Export Co.
 
 v.
 
 Columbia Casualty Co.,
 
 115 Fla., 541,156 So., 116, 95 A. L. R., 258;
 
 City of Keokuk
 
 
 *320
 
 v.
 
 Love,
 
 31 Iowa, 119;
 
 Blake et al., Exrs.,
 
 v.
 
 Traders’ National Bank,
 
 145 Mass., 13,12 N. E., 414;
 
 Indemnity Ins. Co. of North America
 
 v.
 
 Sampson,
 
 40 Cal. App. (2d), 119, 104 P. (2d), 374, and cases cited.
 

 There being no right in Maryland to recover against Gough and American, as his surety, on the theory of indemnity or contribution as such but'only reimbursement from Gough on the theory of subrogation to the rights of the receivership in case it's loss shall be found to be due to the joint default of Devine and Gough, the question arises, may Maryland recover from American on the thepry that American was its cosurety?
 

 Where several sureties stand in the relation to each other of
 
 cosureties,
 
 by being bound for the same person for the same debt or obligation, so that they have a common interest or a common burden to bear, if one of them is compelled to bear the whole of the burden alone, he may call upon his cosureties to equalize the burden.
 
 Hartwell
 
 v.
 
 Smith,
 
 15 Ohio St., 200, 203;
 
 Camp
 
 v.
 
 Bostwick,
 
 20 Ohio St., 337, 346, 5 Am. Rep., 669; 50 American Jurisprudence, 905, Section 4, and 1083, Section 271.
 

 But, “sureties on two different bonds for different principals, where the sureties on one bond assume no responsibility for the acts or defaults of the principal on the other bond, are not cosureties. The fact that there might he a default for which both principals are guilty, or for which they might both be charged jointly, does not make the obligation common to the two sets-of sureties.” 50 American Jurisprudence, 906, Section 4, citing
 
 Southern Surety Co.
 
 v.
 
 Tessum, 178
 
 Minn., 495, 508, 228 N. W., 326, 331, 66 A. L. R., 1136,1146. See
 
 United States Fidelity & Guaranty Co.
 
 v.
 
 Commercial Casualty Ins. Co.,
 
 222 Wis., 151, 268 N. W., 111.
 

 Maryland, to recover against American, must base its claim upon having equities superior to those of
 
 *321
 
 American, and not upon being subrogated to the right of the successor receiver against American. Such superior equities do not exist. In this case, each bond was the separate obligation of the principal who signed it together with his surety, and neither is the joint bond of the two principals. American agreed to reimburse the receivership for loss occasioned by the default of Gough, but not for the default of Devine. Neither bond was intended to be the joint obligation of Devine and Gough.
 

 It is true that if Gough was jointly or severally liable with Devine because of Gough’s negligent inattention to his duties owing to the receivership and not by wrongful participation and connivance with Devinein the conversion of the funds in question, and American, Gough’s surety, had been obliged to respond and make good the loss, it might have a right to recover against Maryland.
 
 Southern Surety Co.
 
 v.
 
 Tessum, supra;
 
 Restatement of Security, 413, Section 147 (3), comment
 
 c,
 
 page 416, and illustrations. A reverse factual situation, namely that Devine was not an actual wrongdoer, is not supported by the pleadings or the evidence and therefore Maryland may not, under such circumstances, maintain its action against American.
 

 This court does not decide whether Gough, in any manner, participated with Devine in bringing about the loss suffered by the loan association. Maryland is entitled to an answer to that question at the hands of a jury under proper instructions. Not having been so-answered, we are remanding the ease to the trial court in order that it may be submitted to a jury under appropriate instructions.
 

 For reasons here stated, the judgment of the Court of Appeals as to American must also be affirmed.
 

 Judgment affirmed.
 

 
 *322
 
 Wevgandt, C. J., Zimmerman, Turner and Matthias, JJ., concur.
 

 Williams, J., concurs in paragraphs 1, 2, 3 and 4 of the syllabus, but dissents from the judgment as to American Surety Company.
 

 Bell, J., dissents.